402 So.2d 46 (1981)
John Henry FIELDS, Appellant,
v.
STATE of Florida, Appellee.
No. NN-228.
District Court of Appeal of Florida, First District.
August 11, 1981.
*47 Michael J. Minerva, Public Defender, Gene S. Taylor, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
On this appeal[1] from a judgment of conviction and sentence on a charge of robbery, we are now required to dispose of allegations of error independent of those treated in our initial opinion in this cause.
Appellant, a juvenile, challenges the denial of his motion to suppress uncounseled confessions and admissions obtained during a custodial detention and interrogation of approximately four hours. Although appellant expressly waived his Miranda rights, we conclude that his action cannot be regarded as a voluntary, intelligent, or knowing waiver, and the various confessions and admissions should have been suppressed.
Appellant was, in formal terms, repeatedly advised of and said that he understood his Miranda rights, but upon being asked if he wanted a lawyer his response was that "I can't afford to get one." Appellant's interrogators did not then or at anytime thereafter make any further statement or clarification regarding his right to counsel. The trial judge suppressed the confession which was given contemporaneously with the quoted statement, but did not suppress the various other confessions and admissions given prior and subsequent to the statement.
A court-appointed psychologist testified that appellant had a reduced mental ability involving a "visual perceptual disorder" with brain damage and attention span problems, and that he had the reading ability of a first-grade student. The doctor also testified that appellant "would have trouble" understanding his Miranda rights as they were read to him.
A Miranda waiver during custodial interrogation is valid only if it is a voluntary, intelligent, and knowing waiver. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tennell v. State, 348 So.2d 937 (Fla.2d DCA 1977). In determining whether a waiver is voluntary, intelligent, and knowing, the court must consider the totality of the circumstances, and while a juvenile may waive his Miranda rights, the state bears a "heavy burden" in establishing that the waiver is valid. Arnold v. State, 265 So.2d 64 (Fla.3d DCA 1972), cert. denied, 272 So.2d 817 (Fla. 1973). In the present case the testimony of the court-appointed psychologist and appellant's statement regarding his inability to afford an attorney show plainly that appellant did not intelligently comprehend the meaning of his Miranda rights to have counsel even if he could not afford the cost. The record also reflects false police assertions[2] apparently calculated to delude appellant and destroy his resistance. We conclude that appellant has established that his waiver of *48 Miranda rights was not a voluntary, intelligent, and knowing waiver, and the trial judge should accordingly have granted his motion to suppress the confessions and admissions in question.
The judgment and sentence appealed are reversed and the cause is remanded for further proceedings.
SHAW, J., concurs.
LARRY G. SMITH, J., specially concurs with opinion.
LARRY G. SMITH, Judge, specially concurring.
Evidence presented by the State at the suppression hearing revealed, as noted in the majority opinion, that appellant when asked if he wanted a lawyer stated "I can't afford to get one." During the period of approximately two hours[1] preceding this statement appellant had received Miranda warnings three times: First, at a playground in a residential neighborhood where the officers initially made contact with him; second, when he arrived at the Sheriff's Office in the Courthouse after agreeing to voluntarily accompany the officers there for further discussion of the crime for which he was later charged; and third, at the beginning of the taped interview at which appellant made the statement about not being able to afford counsel. Appellant initially denied being involved in the offense when first contacted by the officers. After the second Miranda warning at the Sheriff's Office, the officers conducted further questioning and investigation of information given by appellant tending to establish an alibi. This went on for an hour or so, at which time one of the officers made the factually incorrect representation to appellant that his fingerprints had been identified at the crime scene. This incorrect statement triggered appellant's first incriminating statement, to the effect that "I might have touched the door when I was leaving." The officers then commenced the taped interview at which time the third Miranda warning was given.
Edwards v. Arizona, ___ U.S. ___, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), reaffirmed the stringent standard of Miranda and subsequent cases which require that a waiver of counsel must not only be "voluntary," but constitute a "knowing and intelligent relinquishment of a known right or privilege ..." (___ U.S. at ___, 101 S.Ct. at 1883).[2] The court further elaborated on this standard by holding that "once an accused has invoked the right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated interrogation even if he has been advised of his rights." Id. at ___, 101 S.Ct. at 1884.
The circumstances of appellant's interrogation, coupled with the evidence of his diminished mental capacity, preclude a finding that at the time he made his initial incriminating statement he knew and understood his right to have free counsel provided by the state. His subsequent statement regarding his inability to afford counsel must be considered, in my opinion, not only with respect to the first taped confession, which was suppressed by the trial court, but to his preceding untaped statements and the second taped statement, which were not suppressed. Appellant's assertion concerning his inability to afford counsel appears to have been made spontaneously, in response to a specific question concerning his desire for counsel, and there *49 is no indication that it was spurious or fabricated for the purpose and with the intent of invalidating his earlier incriminating statements. Both the taped and the untaped conversations were, for all intents and purposes, one continuous investigative episode. When so viewed, appellant's declaration of inability to afford counsel was virtually contemporaneous with his preceding incriminating statements, and the conclusion is inescapable that he never understood his right to free counsel, and his right to free appointed counsel was never explained to him even after his misunderstanding was apparent.
It is now clear from the decision in Edwards v. Arizona, supra, that free and voluntary response to police interrogation cannot alone show waiver of the right to counsel where that right has previously been invoked. Applying an equally stringent waiver standard here, I am satisfied that appellant's free and voluntary response to police interrogation is not sufficient to show a waiver of counsel where his later response clearly and unequivocally demonstrates his lack of understanding of the right to free counsel. Although it is entirely within the province of the trial court to judge the intelligence and understanding of any accused in suppression hearings, it appears that a less exacting waiver standard was applied here. For this reason I would join with the majority in reversing the order denying suppression of the untaped statements and the taped statement later made at the Tallahassee Police Department.
NOTES
[1] After remand from the Supreme Court, State v. Fields, 394 So.2d 1015 (Fla. 1981), reversing Fields v. State, 377 So.2d 223 (Fla. 1st DCA 1979).
[2] Appellant was told that he had been identified by a confidential informant and that his fingerprints had been found at the scene of the robbery. The record shows that neither statement was true.
[1] At approximately 2:00 p.m. the officers drove to appellant's home, talked briefly with his mother, and shortly thereafter spotted appellant in a neighborhood park. The first taped statement commenced at 4:05 p.m.
[2] This decision, further elaborating upon the scope of Miranda rights, came long after the trial judge's ruling here reviewed. Mr. Justice White's majority opinion points out the clear distinction between the consent to search standard of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), which requires only that the consent be "voluntary under the totality of the circumstances," and the standard for waiver of the right to counsel, which mandates a showing of "`intentional relinquishment or abandonment of a known right or privilege.'" Edwards v. Arizona, ___ U.S. at ___, 101 S.Ct. at 1883.